IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LADARRA LENNON,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH DOYLE BINZ DDS MS, LLC d/b/a ST. LOUIS COUNTY PERIODONTICS & DENTAL IMPLANTS,<br><br>Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PREGNANCY AND SEX DISCRIMINATION IN VIOLATION OF TITLE VII, THE PREGNANCY DISCRIMINATION ACT, AND THE PREGNANT WORKERS FAIRNESS ACT**

Plaintiff LaDarra Lennon brings this action against Defendant Elizabeth Doyle Binz DDS MS, LLC d/b/a St. Louis County Periodontics & Dental Implants for pregnancy discrimination, sex discrimination, failure to accommodate, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e et seq., and the Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg et seq.

**INTRODUCTION**

1. Plaintiff worked for Defendant as a dental assistant from approximately sAugust 2022 until Defendant terminated her employment on February 15, 2024. In that role, Plaintiff assisted surgeons and dental providers during dental surgeries and procedures.
2. Plaintiff became pregnant during her employment and informed Defendant, through her supervisor Teresa Kalist, of her pregnancy in or around July or August 2023. After Plaintiff disclosed her pregnancy, Defendant began treating Plaintiff differently, including by

scrutinizing her pregnancy-related medical appointments, pregnancy-related illness, and pregnancy-related work limitations.

3. Plaintiff experienced pregnancy-related symptoms, including morning sickness, migraines, swelling, and physical limitations. Plaintiff gave Defendant advance notice of her scheduled pregnancy-related medical appointments and provided a doctor's note requesting that she minimize bending and receive a lighter workload. Plaintiff also raised concerns about exposure to nitrous oxide during pregnancy because of safety concerns for her unborn child and because Plaintiff had previously experienced a pregnancy loss.

4. Defendant claims it terminated Plaintiff for attendance issues. However, Defendant's stated reason was false, incomplete, and pretextual. During the termination call, Defendant's decisionmaker referenced Plaintiff's upcoming pregnancy-related doctor's appointment immediately before confirming that Defendant was terminating Plaintiff's employment. Defendant therefore terminated Plaintiff because of her pregnancy, sex, pregnancy-related medical needs, pregnancy-related restrictions, and/or requests for pregnancy-related accommodations.

## PARTIES

5. Plaintiff LaDarra Lennon is an individual residing in St. Louis, Missouri.

6. Defendant Elizabeth Doyle Binz DDS MS, LLC d/b/a St. Louis County Periodontics & Dental Implants is a dental practice operating in Chesterfield, Missouri.

7. At all relevant times, Defendant was an employer within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg.

8. At all relevant times, Defendant employed Plaintiff.

9. At all relevant times, Defendant acted through its owners, managers, supervisors, agents, and employees.

10. At all relevant times, Teresa Kalist was Plaintiff's supervisor, office manager, and/or a managerial employee acting on behalf of Defendant.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over Plaintiff's Title VII claim pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

12. This Court has subject matter jurisdiction over Plaintiff's Pregnant Workers Fairness Act claim pursuant to 42 U.S.C. § 2000gg-2 and 28 U.S.C. § 1331.

13. This Court has authority to award legal and equitable relief under Title VII, the Pregnancy Discrimination Act, and the Pregnant Workers Fairness Act.

14. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged in this Complaint occurred in Missouri, Plaintiff worked for Defendant in this District, and Defendant conducts business in this District.

15. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights, Charge No. 560-2024-03665.

16. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights, Charge No. 560-2024-03665. On or about July 6, 2026, Plaintiff received notice that the EEOC dismissed the charge and issued a Determination and Notice of Rights. Plaintiff files this action within ninety days of receiving that notice.

17. Plaintiff timely files this action within ninety days of receiving her EEOC Notice of Rights.

18. Plaintiff has satisfied all administrative prerequisites to bringing her federal claims, or such prerequisites have otherwise been satisfied, waived, or excused.

## GENERAL ALLEGATIONS

### A. Plaintiff's Employment with Defendant

19. Defendant hired Plaintiff in or around late August 2022.
20. Plaintiff began working for Defendant in or around early September 2022.
21. Plaintiff worked as a dental assistant.
22. Plaintiff was an hourly employee.
23. Plaintiff regularly worked approximately full-time hours.
24. Plaintiff's duties included assisting surgeons and dental providers during dental surgeries and procedures.
25. Plaintiff's direct supervisor was Office Manager Teresa Kalist.
26. Plaintiff was qualified for her position.
27. Plaintiff performed her job duties satisfactorily.

### B. Plaintiff Disclosed Her Pregnancy and Needed Pregnancy-Related Medical Care

28. Plaintiff became pregnant during her employment with Defendant.
29. Plaintiff informed Ms. Kalist that she was pregnant in or around July or August 2023.
30. Plaintiff experienced pregnancy-related medical symptoms, including morning sickness and migraines.
31. Plaintiff also experienced swelling and physical limitations during her pregnancy.
32. Plaintiff had pregnancy-related medical appointments scheduled in advance.

33. Plaintiff notified Ms. Kalist of her scheduled pregnancy-related medical appointments.

34. Plaintiff provided Ms. Kalist with a list of scheduled appointments.

35. Plaintiff kept Ms. Kalist informed when pregnancy-related illness caused her to need time away from work or to leave work early.

36. Plaintiff could not control when pregnancy-related sickness occurred.

37. Plaintiff reasonably expected Defendant to treat her pregnancy-related medical needs the same as other employees' medical needs and comparable absences.

**C. Defendant Treated Plaintiff Differently After Learning She Was Pregnant**

38. After Plaintiff disclosed her pregnancy, Ms. Kalist began treating Plaintiff differently.

39. Plaintiff was subjected to increased scrutiny concerning attendance and time away from work.

40. Ms. Kalist complained about Plaintiff's pregnancy-related sickness and medical appointments.

41. Ms. Kalist told Plaintiff, in substance, that she should handle personal issues during four-day weekends.

42. Plaintiff objected because she could not control when she was sick or when pregnancy-related issues arose.

43. Defendant treated other employees more leniently with respect to attendance.

44. On information and belief, at least one non-pregnant dental assistant called off work frequently, including approximately one day per week, without being terminated.

45. On information and belief, other employees were allowed to take time off for personal reasons without being subjected to the same scrutiny or termination.

46. Defendant did not apply its attendance expectations equally to Plaintiff after learning she was pregnant.

**D. Plaintiff Requested Pregnancy-Related Work Modifications**

47. Plaintiff's pregnancy created physical limitations affecting her ability to perform certain tasks.
48. Plaintiff provided Defendant with a doctor's note dated on or about December 7, 2023.
49. The doctor's note requested that Plaintiff minimize bending and receive a lighter workload.
50. Plaintiff also requested that Defendant avoid assigning her to procedures involving nitrous oxide because of pregnancy-related safety concerns.
51. Plaintiff had previously experienced a pregnancy loss.
52. Plaintiff informed Ms. Kalist of her prior pregnancy loss.
53. Plaintiff was concerned that nitrous oxide exposure could endanger her unborn child.
54. Plaintiff reasonably requested that she not be assigned to surgeries or procedures involving nitrous oxide.
55. Plaintiff's requests were based on known limitations related to pregnancy, childbirth, or related medical conditions.
56. Plaintiff alleges Defendant did not adequately honor those requests.
57. Plaintiff further alleges Defendant continued assigning her physically demanding work, including work with the busiest doctor, despite her pregnancy-related limitations.
58. Plaintiff alleges other non-pregnant employees were available to perform work that was inconsistent with Plaintiff's pregnancy-related restrictions.

59. Plaintiff also alleges Defendant had previously accommodated another pregnant provider's concerns about nitrous exposure more favorably than it accommodated Plaintiff's concerns.

60. Defendant treated Plaintiff's pregnancy-related limitations and safety concerns less favorably than comparable non-pregnancy-related limitations or concerns.

**E. The February 2024 Family Emergency**

61. On or about February 12, 2024, Plaintiff received a late-night message from her 12-year-old son in Connecticut.

62. Plaintiff's son reported that he and his sibling were being physically abused by their father.

63. Plaintiff reported the emergency to Ms. Kalist.

64. Plaintiff came to work on or about February 13, 2024, and explained the family emergency to Ms. Kalist.

65. Plaintiff kept Ms. Kalist informed concerning the emergency.

66. Plaintiff traveled to Connecticut to retrieve her children.

67. Plaintiff remained in communication with Ms. Kalist during this time.

68. Plaintiff informed Ms. Kalist about her travel status and efforts to return.

69. Plaintiff's return flight was delayed.

70. Plaintiff nevertheless informed Ms. Kalist that she intended to return to work.

71. Plaintiff's need to address the emergency was temporary.

72. Plaintiff did not abandon her job.

**F. Defendant Terminated Plaintiff**

73. On or about February 15, 2024, Ms. Kalist called Plaintiff and terminated her employment.

74. During the call, Ms. Kalist told Plaintiff, in substance, "We have to let you go so you can take care of your personal business."

75. Plaintiff responded, in substance, that she could take care of her personal business on her days off.

76. Ms. Kalist then referenced Plaintiff's doctor's appointment the next day.

77. Plaintiff confirmed she had a doctor's appointment.

78. Ms. Kalist then stated, in substance, "Well, see, we have to let you go."

79. The doctor's appointment referenced by Ms. Kalist was pregnancy related.

80. Ms. Kalist knew the appointment was pregnancy related.

81. Defendant terminated Plaintiff immediately after referencing her pregnancy-related doctor's appointment.

82. Defendant identified attendance as the reason for termination.

83. Defendant's stated reason for termination was intertwined with Plaintiff's pregnancy-related medical needs, pregnancy-related appointments, pregnancy-related symptoms, requested pregnancy-related accommodations, and Defendant's differential treatment of Plaintiff after learning she was pregnant.

84. Defendant's stated reason for termination was false, incomplete, and pretextual.

85. Defendant terminated Plaintiff because of her pregnancy, sex, pregnancy-related medical needs, pregnancy-related absences, and/or requests for pregnancy-related accommodations.

**G. Plaintiff's Damages**

86. Plaintiff lost wages and employment benefits as a result of Defendant's conduct.

87. Plaintiff had unused PTO at or near the time of termination.

88. Plaintiff did not receive a separation notice.

89. Plaintiff applied for unemployment benefits after termination.

90. Plaintiff received a small amount of unemployment benefits.

91. Plaintiff suffered emotional distress, humiliation, embarrassment, stress, anxiety, and other compensatory damages as a result of Defendant's conduct.

92. Plaintiff has incurred and will continue to incur attorneys' fees and costs.

93. Plaintiff seeks all relief available under applicable law.

## COUNT I

## PREGNANCY DISCRIMINATION / SEX DISCRIMINATION TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT 42 U.S.C. §§ 2000e et seq.

94. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

95. Title VII makes it unlawful for an employer to discharge an individual or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of sex.

96. The Pregnancy Discrimination Act amended Title VII to provide that the terms "because of sex" and "on the basis of sex" include pregnancy, childbirth, or related medical conditions.

97. Plaintiff was pregnant during the relevant period.

98. Plaintiff's pregnancy was known to Defendant.

99. Plaintiff was qualified for her position as a dental assistant.

100. Plaintiff performed her job satisfactorily.

101. Defendant subjected Plaintiff to adverse employment actions, including increased scrutiny, less favorable treatment, criticism of pregnancy-related medical needs, failure to treat pregnancy-related limitations equally, and termination.

102. Plaintiff's pregnancy, sex, pregnancy-related medical needs, and pregnancy-related absences were motivating factors in Defendant's treatment of Plaintiff and termination of her employment.

103. Defendant treated Plaintiff less favorably than similarly situated non-pregnant employees and/or employees with comparable non-pregnancy-related attendance or medical needs.

104. Defendant's stated reason for terminating Plaintiff was false, incomplete, pretextual, or otherwise insufficient to explain the decision.

105. Defendant's conduct violated Title VII, as amended by the Pregnancy Discrimination Act.

106. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, and other damages.

## COUNT II

## FAILURE TO ACCOMMODATE AND ADVERSE ACTION<br>PREGNANT WORKERS FAIRNESS ACT<br>42 U.S.C. §§ 2000gg et seq.

107. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

108. The Pregnant Workers Fairness Act makes it an unlawful employment practice for a covered entity not to make reasonable accommodations to the known limitations related to pregnancy, childbirth, or related medical conditions of a qualified employee unless the covered entity can demonstrate undue hardship.

109. The Pregnant Workers Fairness Act also makes it unlawful for a covered entity to take adverse action in the terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to known limitations related to pregnancy, childbirth, or related medical conditions.

110. Plaintiff was a qualified employee within the meaning of the Pregnant Workers Fairness Act.

111. Plaintiff had known limitations related to pregnancy, childbirth, or related medical conditions.

112. Plaintiff notified Defendant of her pregnancy-related limitations and needs.

113. Plaintiff provided Defendant with a doctor's note requesting reduced bending and a lighter workload.

114. Plaintiff also requested that she not be assigned to procedures involving nitrous oxide because of pregnancy-related safety concerns.

115. Plaintiff's requested accommodations were reasonable.

116. Defendant had other employees available to assist with procedures or duties inconsistent with Plaintiff's pregnancy-related restrictions.

117. Defendant failed to make reasonable accommodations for Plaintiff's known pregnancy-related limitations.

118. Defendant subjected Plaintiff to adverse action after she requested and/or used pregnancy-related accommodations.

119. Defendant terminated Plaintiff's employment because of, in whole or in part, her pregnancy-related limitations, requested accommodations, and pregnancy-related medical needs.

120. Defendant's conduct violated the Pregnant Workers Fairness Act.

121. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, and other damages.

## COUNT III

## WRONGFUL TERMINATION IN VIOLATION OF TITLE VII AND THE PREGNANT WORKERS FAIRNESS ACT

122. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

123. Plaintiff was terminated on or about February 15, 2024.

124. Defendant claims Plaintiff was terminated because of attendance.

125. Plaintiff's alleged attendance issues included pregnancy-related medical appointments, pregnancy-related symptoms, requested pregnancy-related accommodations, and circumstances Defendant knew were connected to Plaintiff's pregnancy-related needs.

126. During the termination call, Defendant's decisionmaker specifically referenced Plaintiff's upcoming doctor's appointment, which was pregnancy related.

127. Defendant terminated Plaintiff because of, or at least in substantial part because of, Plaintiff's pregnancy, sex, pregnancy-related medical needs, pregnancy-related absences, and requests for pregnancy-related accommodations.

128. Defendant's termination of Plaintiff violated Title VII, as amended by the Pregnancy Discrimination Act, and the Pregnant Workers Fairness Act.

129. As a direct and proximate result of Defendant's wrongful and unlawful termination, Plaintiff suffered damages, including lost wages, lost benefits, emotional distress, humiliation, embarrassment, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff LaDarra Lennon respectfully requests that the Court enter judgment in her favor and against Defendant and award:

A. Back pay and lost benefits;

B. Front pay or reinstatement, if appropriate;

C. Compensatory damages, including emotional distress damages;

D. Punitive damages, if permitted by law;

E. Prejudgment and post-judgment interest;

F. Reasonable attorneys' fees and costs;

G. Declaratory relief that Defendant's conduct violated Plaintiff's rights under federal law; and

H. Such other and further relief as the Court deems just and proper.

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

**BARRETT & FARAHANY**

*By: /s/ Alan G. Crone*

Alan G. Crone, MO Bar No. 73285
Alex W. Gass, MO Bar No. 72810

*Attorneys for Plaintiff LaDarra Lennon*

2921 Piedmont Road
Atlanta, GA 30305
P: (901) 737-7740
P: (314) 973 3163
F: (404) 541 4772
acrone@justiceatwork.com
agass@justiceatwork.com

**DECLARATION AND VERIFICATION**

I, **LaDarra Lennon**, verify and declare that the facts stated in the foregoing Verified Complaint to the best of my knowledge and belief are true, and that the Complaint is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned in the Complaint.

La'Darra Brena Lennon (Oct 2, 2026 12:02:54 CDT)

LaDarra Lennon

Date: 10/02/2026